IN THE UNITED STATES COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **SANCHEZ MORAN, BRAYAN**<br>**Petitioner,**<br><br>**vs.**<br><br>**TODD BLANCHE, in his official capacity as Attorney General of the United States; TODD LYONS, in his official capacity as Acting Director, Immigration and Customs Enforcement; ROB JEFFREYS, in his official capacity of Director of Nebraska Department of Corrections; Department of Homeland Security** | **Case No.** |

PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND COMPLAINT FOR INJUNCTIVE RELIEF

COMES NOW, the Petitioner in the above captioned case, by and through his attorney Paul J. Forney, and hereby petitions this Court for a writ of habeas corpus to remedy Petitioner's unlawful detention, and enjoin Petitioner's unlawful detention by the Respondent. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

## PARTIES

1. Petitioner is a native and citizen of Mexico.
2. Respondent Todd Blanche, Attorney General of the United States. As such, Mr. Blanche is the head of the Department of Justice, which encompasses the Board of Immigration Appeals. Mr. Blanche is being sued in his official capacity.
3. Respondent Todd Lyons is the Acting Director, Immigration and Customs Enforcement. In this capacity, Mr. Lyons has responsibility for the enforcement of immigration laws. Mr. Lyons is being sued in his official capacity.
4. Respondent Rob Jeffreys, Director of Nebraska Department of Corrections. In this capacity, Mr. Jeffreys oversees the entire Nebraska corrections system. Nebraska has contracted with the Department of Homeland Security to be managed by the Nebraska Department of Correctional Services. Mr. Jeffreys being sued in his official capacity.
5. Department of Homeland Security.

## JURISDICTION

6. This action arises under the Constitution of the United States, 28 U.S.C. § 2241(c)(1), and the Immigration and Nationality Act, as amended ("INA"), 8 U.S.C. § 1101 et seq. This Court has subject matter jurisdiction under 28 U.S.C. § 2241, Art. I § 9, cl. 2 of the United States Constitution ("Suspension Clause"), and 28 U.S.C. § 1331, as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. See *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); INS v. St. Cyr, 533 U.S. 289, 301 (2001)("at its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest."); *Clark v. Martinez*, 543 U.S. 371 (2005) (holding that *Zadvydas* applies to aliens found inadmissible as well as removable); *Nnadika v. U.S. Att'y Gen.*, 484 F.3d 626, 632 (3rd Cir. 2007) (holding that, post-REAL ID, challenges to detention remain within the jurisdiction of the district court).

## VENUE

7. Venue lies in the District of Nebraska because Petitioner is currently detained in the territorial jurisdiction of this Court, at the McCook Detention Facility and/or the Sarpy County Jail (hereinafter, "McCook"). 28 U.S.C. § 2241 et seq. and 28 U.S.C. § 1391.

## EXHAUSTION OF REMEDIES

8. Courts generally require "administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 496 (S.D.N.Y. 2025) (citations omitted). However, such exhaustion is not a "statutory requirement." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 496 (S.D.N.Y. 2025) (citations and quotations omitted). Courts can waive the exhaustion requirement if administrative remedies would be futile or irreparable injury will result. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025). Since the Petitioner is facing deportation, irreparable injury will result.

## STATEMENT OF FACTS

9. Petitioner is a citizen and national of Mexico.
10. On August 19, 2026, the Petitioner was pulled over by the Nebraska State Patrol.
11. The officer developed reasonable suspicion that the Petitioner was a alien based on his inability to speak and understand English.
12. The Petitioner was taken into custody and transported to the ICE office in Omaha, Nebraska.
13. The Petitioner remains in custody since his arrest.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

14. The issue is whether the Petitioner should be mandatorily detained under 8 U.S.C. § 1225(b)(2) or under 8 U.S.C. § 1226(a) and therefore be entitled to a bond hearing.
15. Case law and statutory construction principles show that the Petitioner is currently detained under § 1226(a).

16. The Supreme Court has held that the clear and convincing evidence standard applies to civil detention where liberty is at stake. *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1186 (D. Colo. 2024).
17. While immigration proceedings are in progress, most aliens may be released on bond or paroled. *Rodriguez v. Shanahan*, 84 F. Supp. 3d 251, 254 (S.D.N.Y. 2015) (quotations omitted). There are two statutes which principally govern the detention of non-citizens pending removal proceedings, § 1225(b)(2) and § 1226(a). *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at 11 (D. Mass. Aug. 19, 2025).
18. The distinction is whether the non-citizen is seeking admission or whether removal proceedings are taking place after already being in the United States. A "applicant(s) for admission" are those apprehended at the border or at a port of entry. *Rodriguez v. Robbins*, 715 F.3d 1127, 1132 (9th Cir. 2013). This 'applicant for admission' is seeking admission and detention is governed by § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). This type of non-citizen, who has not gained entry, has been described as being on the 'threshold of initial entry.' *Xi v. U.S. I.N.S.*, 298 F.3d 832, 838 (9th Cir. 2002). An alien on the threshold of entry "stands on a different footing" in regard to Due Process rights. *Xi v. U.S. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002) (citations omitted).
19. The seminal Supreme Court case for differentiating between § 1225(b)(2) and § 1226(a) is *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).
20. In *Jennings*, the Supreme Court acknowledged and reaffirmed a basic, straightforward distinction between the two statutes. Namely, that § 1225(b)(2) applies to aliens *seeking admission* to the United States and § 1226(a) applies to aliens already in the country pending the outcome of removal proceedings (i.e., applicant for admission). *Jennings*, 583 U.S. at 289. The law has consistently reached the sensible and obvious conclusion that these are two distinct, separate elements. *Martinez v. Hyde*, 2025 WL 2084238, at 2 (D. Mass. July 24, 2025); *Romero*, 2025 WL 2403827, at 10.
21. Indeed, § 1225(b)(2) contains different requirements than § 1226(a). For § 1225(b)(2), the statute requires both presence (<u>applicant for admission</u>) and present-tense action (<u>seeking admission</u>). See *Romero v. Hyde*, 2025 WL 2403827, at 9 (D. Mass. Aug. 19,

2025). This would mean for § 1225(b)(2) detention to apply the Petitioner, she would need to be at the 'threshold of entry' to the United States and applying for entrance. See *Xi v. U.S. I.N.S.*, 298 F.3d 832, 838 (9th Cir. 2002). When arrested, the Petitioner was in the Midwest and not near any United States border.

22. Rather, the Petitioner was already in the United States and awaiting the outcome of immigration proceedings. According to Supreme Court precedent, this implicates § 1226(a). See *Jennings*, 583 U.S. at 289.
23. The Department of Homeland Security's novel interpretation that § 1225(b)(2) would govern the Petitioner when already in the United States "is contrary to the agency's own implementing regulations, its published guidance, the decisions of its immigration judges (until very recently), decades of practice, the Supreme Court's gloss on the statutory scheme, and the overall logic of our immigration system." *Romero v. Hyde*, 795 F. Supp. 3d 271, 282 (D. Mass. 2025).
24. Furthermore, principles of statutory construction dictate that § 1226(a) has separate and distinct requirements from § 1225(b)(2).
25. A cardinal principle of statutory construction is that a statute should not be construed (if preventable) so that no clause or word will be superfluous. *Alaska Dept. of Environmental Conservation v. E.P.A.*, 540 U.S. 461, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004). Courts are hesitant to read statutes in a manner rendering parts of them superfluous or inoperative. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 203 L. Ed. 2d 433 (2019). If two different terms are used synonymously in a statute this is superfluous language. *Born v. Allen*, 291 F.2d 345, 351 (D.C. Cir. 1960); *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1253 (11th Cir. 1999). Additionally, words in a statute should not be construed as surplusage if a reasonable construction will provide meaning. *Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004). Similarly, courts presume differences in language convey differences in meaning. *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025).
26. The presumption against superfluity is "at its strongest" when interpreting two parts of the same statutory scheme. *Maldonado*, 795 F. Supp. 3d at 1152.

27. In the case at bar, the presumption against superfluity is at its 'strongest' because two terms within the same statute (i.e., § 1225(b)(2)) scheme are being interpreted. *Maldonado*, 795 F. Supp. 3d at 1152.

28. § 1225(b)(2) uses both 'seeking admission' and 'applicant for admission,' which connotates a different meaning. *Yao v. Almodovar*, 2025 WL 3653433, at 5 (S.D.N.Y. Dec. 17, 2025). One term requires presence (i.e., applicant for admission) and the other requires present-tense action (i.e., seeking admission). *Yao*, 2025 WL 3653433, at 5. The statute would not use two different terms to describe the same statutory requirement because this is superfluous. They each must be a separate term of art with a distinct legal definition.

29. Put differently, since 'applicant for admission' is a legal term of art, § 1225(b)(2) would not use a different term synonymously in the same sentence. Rather, § 1225(b)(2) would have either 1) used the term 'applicant for admission' again or 2) omitted the term 'seeking admission' entirely. *Yao*, 2025 WL 3653433, at 5 (surrounding language of the statute reinforces these terms are not synonymous).

30. Simply put, if the "two requirements were coterminous, that disjunctive formulation would be superfluous." *Yao*, 2025 WL 3653433, at 5. Statutorily speaking, this means that § 1225(b)(2) has different requirements and applies in a different context than § 1226(a).

31. Accordingly, the Petitioner is not an 'applicant for admission' under § 1225(b)(2) because the Petitioner was not on the threshold of entry when apprehended. Rather, the Petitioner was already in the United States while his immigration proceedings are pending and is therefore detained under § 1226(a).

## CLAIM FOR RELIEF

## PROCEDURAL DUE PROCESS

32. The mandatory detention of the Petitioner in McCook Detention Facility under § 1225(b) is inconsistent and violates well-established principles of procedural due process.
33. At the heart of the Fifth Amendment is the right to be free from deprivation of life, liberty, or property without due process of law. U.S. Const. amend. V. Liberty is one of the most fundamental rights afforded and at the heart of the Due Process Clause is the freedom from imprisonment. *Zadvydas*, 533 U.S. at 690. The Due Process Clause extends to all "persons" regardless of status, including non-citizens. *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 784 (E.D. Mich. 2025). Indeed, the Fifth Amendment requires adequate procedural protections to ensure that the government's justification for physical confinement outweighs the constitutionally protected interest in avoiding restraint. *Zadvydas*, 533 U.S. at 690.
34. In order to determine whether civil detention violates a detainee's Fifth Amendment Due Process Rights, courts apply a three-part test. *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts weigh whether 1) the private interest that will be affected by the official action, 2) the risk of an erroneous deprivation of such interests through the procedures used, and 3) the government's interest, including the administrative burdens that the additional procedural requirement would entail. *Mathews*, 424 U.S. at 335.
35. When applying the *Mathews* test, the government must establish by clear and convincing evidence that the Petitioner is dangerous or a flight risk. *L.G.*, 744 F. Supp. 3d at 1181.
36. The Petitioner has a significant private interest in being free from physical detention. While being held on a immigration hold, this is effectively "indistinguishable from criminal incarceration." *Maldonado*, 795 F. Supp. 3d at 1148 (citations omitted). The Petitioner is experiencing all of the deprivations of incarceration, including loss of contact with friends and family, loss of incoming earning, lack of privacy, and lack of

freedom of movement. *Maldonado*, 795 F. Supp. 3d at 1148. These conditions exist despite the fact the Petitioner has no criminal convictions or pending criminal charges.

37. Under the second *Mathews* factor, whether the challenged procedure creates a risk of erroneous deprivation of the individuals' private rights and the degree to which alternate procedures could reduce these risks is assessed. *Maldonado*, 795 F. Supp. 3d at 1148. Detention without any individualized assessment creates a "high risk of erroneous deprivation" of a protected liberty interest. *Edahi v. Lewis*, No. 4:25-CV-129-RGJ, 2025 WL 3466682, at 14 (W.D. Ky. Nov. 27, 2025); see also *Yao v. Almodovar*, No. 2025 WL 3653433 at 11 (S.D.N.Y. Dec. 17, 2025) (ICE's discretion free detention violated the due process) (citations and quotations omitted).

38. Furthermore, as discussed *supra*, the statutory deficiencies and plethora of contrary case law with § 1225(b) being improperly used expound the risk of erroneous deprivation of the Petitioner's due process rights.

39. The third factor is the government's interest, including the fiscal and administrative burdens that the additional procedural requirement would entail. This also requires an assessment of "public interest." *L.G.*, 744 F. Supp. 3d at 1184. Since immigration courts routinely conduct bond hearings, there are "minimal fiscal and administrative burden(s)" involved. *Hong v. Mayorkas*, 2022 WL 1078627, at 5 (W.D. Wash Apr. 11, 2022) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Accordingly, the fiscal and administrative burden of holding a bond hearing for the Petitioner is virtually nonexistent. If anything, the Petitioner's freedom (and resulting employment) results in a net positive for the local economy.

40. Accordingly, the fiscal and administrative burden of holding a bond hearing for the Petitioner is virtually nonexistent.

41. Last, if a noncitizen is neither a flight risk nor dangerous, there is no government or public interest in detention. *L.G.*, 744 F. Supp. 3d at 1185. The Petitioner is gainfully employed and has familial ties to the community. The Petitioner poses no threat to the community nor is a flight risk. Additionally, the Petitioner has dutifully been in

communication with his attorney and has strong ties with the community through his employment and community service.

## PRAYER FOR RELIEF

Wherefore, Petitioner prays that this Court grant the following:

42. Assume jurisdiction over this matter.
43. Order the immediate release of the Respondent due to the violation of procedural due process.
44. In the alternative, grant Petitioner a writ of habeas corpus directing the Respondents to provide the Petitioner with a bond hearing *within one week*.
45. Instruct the Department of Homeland of Security that they have burden of proof to show by clear and convincing evidence that continued detention is necessary to ameliorate the risk of flight or danger.
46. The presiding immigration judge must consider ability to pay a bond and the availability of release with conditions as sufficient to protect any government interest in preventing flight risk or danger.

Respectfully submitted on August 27, 2026.

By: /s/ PAUL J. FORNEY
Paul J. Forney, #24503
Attorney for Respondent
4824 S 24TH ST.
OMAHA, NE 68107
(402) 614-9995

U.S. Department of Homeland Security — Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| SANCHEZ MORAN, BRAYAN | 222 606 859<br>Event No: OMA2608000182 | 08/19/2026 |

The subject claims good health.

CURRENT ADMINISTRATIVE CHARGES
------------------------------
08/19/2026 - 212a6Ai - ALIEN PRESENT WITHOUT ADMISSION OR PAROLE - (PWAs)08/19/2026 - 212a7AiI - IMMIGRANT WITHOUT AN IMMIGRANT VISA

ARRESTED AT/NEAR
----------------
MORMON BRIDGE RD AND 48TH ST, OMAHA, NEBRASKA, UNITED STATES

RECORD OF DEPORTABLE/EXCLUDABLE ALIEN:
--------------------------------------
ARREST/LOCATION:
On 8/19/2026 at approximately 7:00am, 287g certified Nebraska State Patrol Trooper Kaleb Mayfield (NE-TFO-000006) and Nebraska State Patrol Trooper Caleb Brocker (Badge Number 195), performed a traffic stop on a red 2018 Nissan Altima, with Nebraska license BAE826, near the intersection of Mormon Bridge Road and 48th Street in Omaha, NE. The driver of the car was the registered owner of the vehicle, Brayan SANCHEZ-Moran, dob 1/13/2002.

During the initial investigation, SANCHEZ presented the troopers with a valid New Mexico driver's license that was marked "Not Intended For Federal Purposes". Trooper Mayfield developed reasonable suspicion that SANCHEZ was an alien based on his inability to speak and understand English.

Trooper Mayfield contacted Acting Supervisory Detention and Deportation Officer Anthony Gayden, who verified that SANCHEZ is a citizen of Mexico who had previously attempted to enter the US at the Bridge of Americas port of entry in El Paso, TX on 5/19/2022 and on 5/20/2022 and was detained by Customs and Border Protection. They returned him to Mexico under the provisions of title 42 on both occasions. No record of legal immigration status was found.

Acting Supervisory Detention and Deportation Officer Gayden reviewed the information gathered by the troopers, found probable cause for arrest, and issued an I-200 Warrant for Arrest.
The troopers took SANCHEZ into custody and transported him to the Omaha ICE ERO office for processing. Trooper Brocker issued SANCHEZ a warning for Acts declared unlawful-license/driving in violation of Neb. Rev. Stat. 60-491.

ENTRY DATA/IMMIGRATION HISTORY:
SANCHEZ is a citizen of Mexico who last entered the United States on an unknown date at an unknown location without admission, inspection, or parole.

5/19/2022, SANCHEZ attempted to enter the US at the Bridge of Americas port of entry in El Paso, TX and was detained by Customs and Border Protection. They returned him to Mexico under the provisions of title 42.

5/20/2022, SANCHEZ attempted to enter the US at the Bridge of Americas port of entry in El Paso, TX and was detained by Customs and Border Protection. They returned him to Mexico under the provisions of title 42.

CRIMINAL HISTORY
None found.

HEALTH:

| Signature | Title |
|---|---|
| A. 8389 GAYDEN | Deportation Officer |